**FOURTH DIVISION**
**DILLARD, P. J.,**
**MERCIER and COLVIN, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**July 19, 2021**

# In the Court of Appeals of Georgia

A21A0902. PADCO CONTRACTING, INC. v. HERNANDEZ.

MERCIER, Judge.

Padco Contracting, Inc. appeals from a superior court order reversing, in part, a judgment of the State Board of Workers' Compensation. For reasons that follow, we reverse the portion of the superior court's order from which Padco appeals, and we affirm the remainder of the decision, which has not been challenged on appeal.

The record shows that Lorenzo Hernandez sustained compensable workers' compensation injuries on August 13, 2008, when he fell from a scaffolding while working for Padco at a construction site. Hernandez began receiving temporary total disability benefits, and his condition was ultimately accepted as catastrophic. Over the years following the accident, he saw multiple doctors and was treated for injuries to his left lower extremity, his right lower extremity, and his lumbar spine. But when

Hernandez sought treatment for separate thoracic and cervical spine conditions, Padco denied the requests, asserting that those conditions were not related to the 2008 work accident.

An Administrative Law Judge held an evidentiary hearing to determine the compensability of the thoracic and cervical spine injuries, as well as to resolve Padco's pending request for a change in Hernandez's authorized treating physician. After the hearing, the ALJ concluded that Hernandez's "cervical and thoracic spine conditions [were] compensable, either as original injuries from the August 13, 2008 accident, or as superadded injuries, resulting from the compensable injuries to [Hernandez's] lumbar spine, and bilateral lower extremities." The ALJ also denied Padco's request for a change in physician.

Padco appealed the ALJ's ruling to the Appellate Division of the State Board of Workers' Compensation ("the Board"). The Board affirmed the compensability of Hernandez's thoracic spine condition. It reached the opposite conclusion, however, with respect to his cervical spine issues. Noting that "evidence of a pronounced cervical condition did not appear in the medical record until early 2016, nearly eight years after the . . . compensable injury date," the Board found insufficient evidence of a causal relationship between the cervical injury and Hernandez's work accident.

2

It thus denied Hernandez's request for authorized medical treatment of the cervical spine condition. Unlike the ALJ, the Board also determined that a change in physician was appropriate, and it granted Padco's request for a new physician.

Hernandez appealed to the Superior Court of Rockdale County, challenging the Board's decisions regarding his cervical spine condition and the physician change request. The superior court affirmed the decision granting Padco's request for a change of physician. After reviewing the evidence, however, the court reversed the Board's ruling to the extent it deemed Hernandez's cervical condition non-compensable. Asserting that the Board "failed to consider the fact that there was major objective testing that showed a pronounced cervical condition prior to 2016," the superior court concluded that "[t]he facts found by the [Board] did not support [its] finding that there was no evidence of a cervical injury prior to 2016." We granted Padco's application for discretionary review, and this appeal followed.

We must analyze Padco's appeal within the legal framework governing workers' compensation claims. Specifically, the Board has broad authority to review an ALJ's decision granting or denying workers' compensation benefits. The Board may "assess witness credibility, weigh conflicting evidence, and draw different factual conclusions from those reached by the ALJ who initially heard the dispute."

3

*Emory Univ. v. Duval*, 330 Ga. App. 663, 666 (768 SE2d 832) (2015) (citation and punctuation omitted). It may also "disregard factual inferences drawn by the ALJ and substitute its own in place of those inferences." Id. (citation and punctuation omitted). And if, after reviewing the record, the Board determines that the preponderance of competent and credible evidence does not support the ALJ's award, "the Board may substitute its own alternative findings for those of the ALJ, and enter an award accordingly." Id. (citation and punctuation omitted).

In contrast, "neither this Court nor the superior court has any authority to substitute itself as a factfinding body in lieu of the Board." *Emory Univ.*, supra (citation and punctuation omitted). Our role is not to consider whether the evidence supported the ALJ's findings, but to "review the *Board's* award for the sole purpose of determining whether *its findings* are supported by any record evidence." Id. (citation and punctuation omitted; emphasis in original). If we answer that question affirmatively, "the Board's findings are conclusive and binding, regardless of whether we would have reached the same result if given the opportunity to weigh the evidence in the first instance." Id. at 666-667 (citation and punctuation omitted).

On appeal, Padco argues that the superior court erred in reversing the Board's cervical spine determination. We agree. The superior court conducted a de novo

4

evidentiary review, ultimately concluding that the evidence supported the ALJ's findings with respect to the cervical injury, rather than the Board's contrary findings. Nothing, however, authorized the superior court to reweigh the evidence in this manner. As a reviewing court, it was required to construe the evidence favorably to Padco, the party prevailing before the Board, and apply "an any-evidence standard of review to the Board's findings of fact." *McKenney's v. Sinyard*, 350 Ga. App. 260 (828 SE2d 639) (2019) (citation and punctuation omitted). It was not permitted to reject the Board's factual conclusions in favor of its own. See id.; see also *Hartford Cas. Ins. Co. v. Hawkins*, 353 Ga. App. 681, 685-686 (1) (839 SE2d 230) (2020) ("[A] reviewing superior court is not authorized to disregard competent evidence that it believes is not credible, reweigh the evidence, or resolve conflicting evidence, as these powers are reserved solely for the ALJ and the Board." (citation and punctuation omitted)).

We recognize that a superior court may consider de novo whether the Board improperly applied the law to undisputed facts or reached a decision based on an erroneous legal theory. See *McKenney's*, supra. But this case does not involve undisputed facts or an erroneous legal theory. It presents a disputed, fact-based question of causation: is Hernandez's cervical condition related to his 2008 work

5

accident? The Board resolved this factual question against Hernandez, and at least some evidence supports that determination.

The record shows that Dr. Hal Silcox performed an Independent Medical Evaluation of Hernandez in October 2018, at which Hernandez complained of neck pain.[1] Silcox noted that a cervical MRI conducted in January 2016 revealed degenerative changes of the cervical spine, and Hernandez was subsequently diagnosed with chronic spondylosis and multi-level cervical disk herniation. Based on his review of the medical records, however, Silcox determined that Hernandez had not raised complaints about pain in the cervical region until late 2015, which led to the cervical MRI in early 2016. Concluding that the cervical issues "are more consistent with . . . aging," Silcox offered his "opinion to a reasonable degree of medical certainty that the cervical . . . complaints are completely unrelated to the work injury of 8/13/2008."

Hernandez's authorized treating physician for many years also had no record of Hernandez complaining about pain in his cervical spine. And when Hernandez applied for a catastrophic designation with the Board in November 2015, he listed his

---

[1] The term "cervical" is defined as "relating to a neck." See https://www.merriam-webster.com/dictionary/cervical.

6

"Diagnosis-Secondary Condition" as "severe left lower extremity injury; severe lumbar injury; secondary right lower extremity injury." Neither the application nor its supporting memorandum mentioned a cervical condition.

Undoubtedly, the record contains competing evidence. Hernandez testified, for example, that he told his authorized treating physician about his neck pain prior to 2013. A thoracic MRI conducted in 2013 also revealed degenerative changes within the lower cervical spine. But at least some evidence supports the Board's conclusion that evidence of a pronounced cervical condition does not appear in the medical records until 2016. And the Board was authorized to find that a preponderance of the evidence did *not* demonstrate a causal link between the 2008 work accident and Hernandez's cervical spine injury.

Given these circumstances, the superior court erred in reversing the Board's decision regarding the compensability of Hernandez's cervical spine condition. See *Hartford Cas. Ins. Co.*, supra; *McKenney's*, supra at 266-267 (1); *Emory Univ.*, supra at 667. Accordingly, we reverse the superior court's ruling to the extent it reversed the decision of the Board on this issue. The remainder of the superior court's judgment (regarding the requested change in physician) has not been challenged on appeal and is affirmed.

7

*Judgment affirmed in part and reversed in part. Dillard, P. J., and Colvin, J., concur.*